1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9    CARA A. BURKE,

10                          Plaintiff,                    No. C 04-4483 MHP

11            v.

12    PITNEY BOWES, INC. LONG-TERM        **MEMORANDUM & ORDER**
      DISABILITY PLAN,                    **Re: Cross-Motions for Partial Summary**
13                          Defendant.    **Judgment**
      _____/

14          Plaintiff Cara A. Burke filed this action under the Employee Retirement Income Security Act

15    ("ERISA"), 29 U.S.C. § 1001 et seq., seeking review of defendant Pitney Bowes, Inc. Long-Term

16    Disability Plan's decision to terminate her disability benefits.  Now before the court are the parties'

17    cross-motions for summary adjudication as to the issue of what standard of review should be applied

18    in evaluating that decision.  Having considered the arguments presented and for the reasons stated

19    below the court enters the following memorandum and order.

20

21    BACKGROUND

22          Prior to October 1998, plaintiff Cara A. Burke worked as a sales employee for Pitney Bowes

23    Management Services.  Def.'s Exh. A at 288 (hereinafter "AR").  As a Pitney Bowes employee,

24    plaintiff qualified for coverage under the provisions of the long-term disability benefit plan ("the

25    Plan") that defendant administers.  See generally id. at 1-60.  The Plan is subject to the requirements

26    of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

27          On June 3, 1998, plaintiff was involved in a work-related automobile accident.  AR at 79.  As

28    a result of her accident, plaintiff suffered back and neck injuries that caused her to miss

U NITED S TATES D ISTRICT C OURT
For the Northern District of California

1   approximately five days of work.  Id.  Approximately one month later, on July 7, 1998, plaintiff was

2   involved in another, non-work-related car accident.  Id.  This second accident aggravated her back

3   and neck injuries, and she was subsequently diagnosed with multilevel lumbar degenerative disc

4   disease, spinal stenosis, and lumbar radidulopathy.  See id. at 79, 165.

5        On October 26, 1998, plaintiff went on disability leave.  Id. at 79, 236.  She has not returned

6   to work since that date.  See id.  Although she initially received workers compensation benefits

7   during her absence from the workplace, plaintiff never applied for short-term disability benefits and

8   remained on leave after her workers compensation payments ceased.  See id.

9        On June 8, 2001, plaintiff applied for long-term disability benefits.  See id.  Her application

10  was denied by the Plan's claims review fiduciary on the ground that her injuries were work-related

11  and hence not covered by the disability insurance policy that the Plan maintained.  Id. at 235.  Rather

12  than appealing that determination to defendant's Employee Benefits Committee, as is required under

13  the terms of the Plan, plaintiff filed an action in this court on May 20, 2002, alleging violations of

14  sections 104(b), 502(a)(1)(B), and 502(a)(3) of ERISA, 29 U.S.C. §§ 1024(b), 1132(a)(1)(B),

15  1132(a)(3).  See Roboostoff Decl., Exh. 16.[1]  In September 2002, the parties entered into an

16  agreement to settle plaintiff's claims.  Id., Exh. 18.  Under the terms of the settlement agreement,

17  plaintiff received approximately $43,000 as compensation for allegedly past-due disability benefits

18  and agreed to release defendant from liability for all benefits claims arising before August 1, 2002.

19  Id. at 2-3.  After that date, the agreement provided that plaintiff could continue to receive benefits so

20  long as she continued to meet the Plan's definition of "Total Disability," a determination that was to

21  be "governed solely by the terms, process and procedures of the Plan and ERISA."  Id. at 2.

22       Under the terms of the Plan, a participant's ability to perform the "material duties" of his or

23  her own occupation initially guides the Total Disability determination.  AR at 11.  However, after a

24  participant receives benefits for one year, eligibility for benefits turns on whether injury or illness

25  prevents a participant from being able "to engage in any gainful occupation or profession for which

26  he or she is, or could become, reasonably suited by education, experience, or training."  Id.

27

28

2

Plaintiff's initial twelve-month benefit period ended on August 1, 2003, thus triggering the application of the "any gainful occupation" standard for establishing "Total Disability." See id.

In October 2003, defendant's disability department conducted a review of plaintiff's continued benefits eligibility. See id. at 83. As part of that review, the department considered the opinions of consulting physician Peter Griffen; plaintiff's treating physician, Ward Gypson; and the opinion of an outside medical consultant, Richard Berry. Id. at 82. Relying primarily on the opinion of Dr. Berry, the disability department concluded that plaintiff no longer met the Plan's definition of "Total Disability." Id. Specifically, the department cited Dr. Berry's finding that plaintiff's physical and neurological conditions were normal and his conclusion that her subjective symptoms were "unsupported by any objective physical or neurologic findings." Id. Accordingly, the department concluded that plaintiff was able to return to "light duty work" and terminated her long-term disability benefits. Id.

After being informed of that decision in a letter dated November 3, 2003, id., plaintiff appealed the disability department's determination to defendant's Employee Benefits Committee. On September 27, 2004, the Committee met to review plaintiff's claim. See id. at 65. In addition to considering the evidence that was presented to the disability department, the Committee reviewed the result of a functional capacity evaluation that plaintiff underwent on June 28, 2004, an August 24, 2004 letter from Dr. Barry, and updated medical evidence that plaintiff had submitted. Id. at 67. Upon completing its review, the Committee affirmed the disability department's finding that plaintiff was not totally disabled within the meaning of the Plan. Id. at 63. In addition, the Committee identified a number of other grounds for denying plaintiff's claim for benefits, including her refusal to submit to an additional evaluation by Dr. Barry, as is required under the terms of the Plan, and evidence that at least eighty percent of her current condition was attributable to a work-related accident. Id. at 63-64.

Plaintiff was notified the Committee's decision in a letter dated October 12, 2004, id. at 61-64, and this action followed. In her complaint, plaintiff asserts that defendant's decision to discontinue her disability benefits violated ERISA and asserts claims for recovery of past-due

3

1    benefits and declaratory relief.  See 28 U.S.C. § 2201; 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3).  Now

2    before the court are the parties' cross-motions for partial summary judgment on the question of what

3    standard of review should be applied in evaluating the adverse benefit determination at issue, with

4    plaintiff contending that the determination must be reviewed de novo and defendant asserting that

5    the more deferential abuse of discretion standard applies.  The following memorandum and order

6    addresses these arguments.

7

8    LEGAL STANDARD

9    I.      Summary Judgment

10            Summary judgment is proper when the pleadings, discovery, and affidavits show that there is

11   "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

12   of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

13   proceedings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material

14   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

15   nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying

16   those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

17   issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the

18   opposing party will have the burden of proof at trial, the moving party need only point out "that there

19   is an absence of evidence to support the nonmoving party's case."  Id.

20            Once the moving party meets its initial burden, the nonmoving party must go beyond the

21   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

22   genuine issue for trial." Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

23   party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th

24   Cir. 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and

25   inferences drawn from the facts must be viewed in the light most favorable to the party opposing the

26   motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).  Nonetheless, even if

27   summary adjudication of an entire claim is not warranted, Federal Rule of Civil Procedure 56(d)

28

4

1  allows a court to grant partial summary judgment, thereby reducing the number of facts at issue in a

2  trial.  Fed. R. Civ. Pro. 56(d); State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal.

3  1987) (Patel, J.).

4  II.      Judicial Review of Benefits Determinations Under ERISA

5        The long-term disability plan at issue in this action is an employee benefit plan subject to the

6  requirements of ERISA.  A denial of ERISA benefits is reviewed de novo unless "the benefit plan

7  gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to

8  construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

9  Under Firestone, the default presumption is that the administrator has no discretion and must show

10 that the plan confers discretionary authority.  Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th

11 Cir) (en banc), cert. denied, 528 U.S. 964 (1999).  If the benefit plan confers discretion on the

12 administrator, a reviewing court must apply an abuse of discretion standard.  Bendixen v. Standard

13 Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999); McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129, 1132

14 (9th Cir. 1996) (per curiam).

15       Under the abuse of discretion standard, the court's review is limited to the administrative

16 record, and the decision of an administrator will not be disturbed unless the court determines that the

17 decision was arbitrary or capricious.  McKenzie v. General Tel. Co. of Cal., 41 F.3d 1310, 1316 (9th

18 Cir. 1994), cert. denied, 514 U.S. 1066 (1995); Clark v. Washington Teamsters Welfare Trust, 8

19 F.3d 1429, 1431 (9th Cir. 1993).  "The touchstone of 'arbitrary and capricious' conduct is

20 unreasonableness."  Clark, 8 F.3d at 1432.  In contrast, under the de novo standard of review, the

21 normal summary judgment standard applies, and the district court may grant summary judgment only

22 if there are no genuine issues of material fact in dispute.  Tremain v. Bell Indus., Inc., 196 F.3d 970,

23 978 (9th Cir. 1999).

24

25 DISCUSSION

26       The question presented in the parties' cross-motions for summary judgment is whether the

27 court should subject defendant's decision to terminate plaintiff's long-disability benefits to de novo

28

5

1    review rather than reviewing that decision for abuse of discretion.  Plaintiff cites a number of reasons

2    why de novo review is appropriate, including the absence of any provision in the Plan conferring

3    discretion upon its administrator, purported irregularities in the procedures used to evaluate her

4    claim for benefits, and the existence of a conflict of interest that influenced defendant's decision to

5    deny her claim.  The court considers those arguments below.

6    I.    Discretionary Language

7        The first ground that plaintiff cites as a basis for applying de novo review is the absence of

8    discretion-conferring language in the Plan.  This argument can be disposed of summarily.  While

9    plaintiff correctly observes that a decision to deny benefits under an ERISA-governed employee

10   benefit plan is subject to de novo review unless the plan expressly and unambiguously confers

11   discretion on the plan administrator, see Kearney, 175 F.3d at 1090, the plan at issue here expressly

12   provides that "[t]he Employee Benefits Committee shall have discretion in exercising [its] powers

13   and duties under the Plan," AR at 33-34.  These powers and duties include the authority to make

14   final determinations regarding a plan participant's eligibility for disability benefits.  Id. at 26.

15   Plaintiff's argument that the Plan does not confer discretionary authority upon the Committee simply

16   ignores these unambiguous plan provisions and is accordingly not well-taken.

17       Arguing in the alternative, plaintiff also cites the absence of discretionary language in the

18   "Summary Plan Document" ("SPD") that she received from defendant as a basis for applying de

19   novo review.  Section 102 of ERISA, 29 U.S.C. § 1022, requires all employee benefit plan

20   administrators to furnish each plan participant with an SPD that clearly and accurately describes

21   certain information regarding the participant's rights and obligations under the plan, including an

22   explanation of any "circumstances which may result in disqualification, ineligibility, or denial or loss

23   of benefits."  Id. § 1022(b).  While plaintiff argues that such "circumstances" include a plan

24   administrator's discretion to deny benefits, nothing in the plain language of section 102 supports

25   such a reading, and in any event, this argument is foreclosed by the Ninth Circuit's decision in

26   Atwood v. Newmont Gold Co., 45 F.3d at 1317.  In that case, the court expressly rejected an ERISA

27   plan participant's argument that the statutory provision that plaintiff now cites required the plan

28

6

1   administrator to include the plan's discretionary language in the SPD, holding that the omission of

2   such language from the SPD "ha[d] no bearing on the events or actions [that were] determinative of

3   eligibility under the plan" and thus did not violate the requirement that the SPD disclose the

4   "circumstances which may result in . . . ineligibility" for benefits.  Id. at 1321-22 (original emphasis

5   and citation omitted).  This court is of course bound by the holding of Atwood, and the fact that

6   plaintiff's counsel failed to cite such adverse controlling authority raises serious questions

7   concerning his compliance with his ethical obligations as a member of the bar.  That being the case,

8   for purposes of the instant motion, it is sufficient to say the absence of discretionary language in the

9   Plan's SPD does not alter the court's conclusion that the plan documents unambiguously grant

10   defendant the discretion to determine a plan participant's eligibility for disability benefits.  The court

11   therefore rejects plaintiff's argument to the contrary.

12   II.      Violations of Plan Procedures

13          Having concluded that the employee benefit plan at issue unambiguously grants defendant

14   the discretion to make employee benefit determinations, it remains the case that there are a number

15   of circumstances in which the administrator of an ERISA plan is deemed to have forfeited the benefit

16   of such discretionary authority.  Plaintiff cites two reasons why the court should find that defendant

17   has done so here, the first of those being the procedural violations that were allegedly committed in

18   processing her disability benefits claim.  The case most relevant to this first argument is Blau v. Del

19   Monte Corp., 748 F.2d 1348 (9th Cir. 1984), cert. denied, 474 U.S. 865 (1985), which recognized an

20   exception to the general rule that ERISA provides no relief to an employee benefit plan participant

21   who suffers from a procedural error in the processing of his or her claim for benefits.  See id. at

22   1353-54.  Specifically, the court held that where a plan administrator's violations of plan procedures

23   are so egregious that they "alter the substantive relationship between employer and employee,"

24   courts should consider such violations to be "highly probative" evidence that a decision to deny a

25   benefits claim was made pursuant to an "objectionable scheme."  Id. at 1354.  While the court did

26   not hold that such evidence necessarily alters the standard of review, the Ninth Circuit has

27   subsequently made clear that deferential review of the administrator's decision is inappropriate under

28

7

1   the circumstances that <u>Blau</u> identified.  <u>See</u> <u>Gatti v. Reliance Std. Life Ins. Co.</u>, 409 F.3d 1061,

2   1067-68 (9th Cir. 2005); <u>cf.</u> <u>Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot.</u>

3   <u>Plan</u>, 349 F.3d 1098, 1105-06 (9th Cir. 2003) (holding that de novo standard of review applies where

4   a plan administrator fails to exercise the discretion conferred upon it under the terms of an employee

5   benefit plan), <u>cert. denied</u>, __ U.S. __, __ S. Ct. __, 72 U.S.L.W. 3553, 73 U.S.L.W. 3059 (2005).

6   At the same time, however, the Ninth Circuit has recently confirmed that the exception that the <u>Blau</u>

7   court identified is a narrow one, as it applies only where the procedural violations committed by the

8   plan administrator "are so flagrant as to alter the substantive relationship between the employer and

9   employee, thereby causing the beneficiary substantive harm."  <u>Gatti</u>,  409 F.3d at 1068.

10          In applying this standard to the case at bar, the court begins by noting that plaintiff

11   inexplicably cites a number of alleged procedural violations that took place prior to August 1, 2002.

12   To the extent that her claims are premised upon such violations, plaintiff waived any right to pursue

13   them when she agreed to settle her pre-August 2002 benefits claims.  <u>See</u> Roboostoff Decl., Exh. 18

14   at 3.  They are thus properly disregarded in litigating the instant action, which in any event is

15   directed at obtaining relief from a decision to discontinue plaintiff's disability that did not take place

16   until November 2003.

17          With respect to that decision, plaintiff identifies two purported procedural defects in

18   defendant's decisionmaking process, the first being the fact that defendant's Employee Benefits

19   Committee cited a number of grounds for discontinuing plaintiff's benefits eligibility that the

20   disability department had not identified as bases for its initial decision to terminate plaintiff's

21   disability benefit payments.  <u>See</u> AR at 63-64.  However, plaintiff has not cited any provision of the

22   Plan that would prohibit the Committee from considering issues that were not raised by the disability

23   department,[2] and even if she could do so, the disability department's finding that plaintiff did not

24   meet the Plan's definition of "Total Disability," which was affirmed by the Committee, provides an

25   adequate and independent ground for terminating plaintiff's benefits.  This fact forecloses any

26   possibility that plaintiff might have suffered any substantive harm from the Committee's willingness

27

28

1   to consider additional reasons for terminating her disability benefits, as would be required to subject

2   its conclusions to de novo review.  See Gatti,  409 F.3d at 1068.

3         The only other purported procedural irregularity that plaintiff identifies is premised upon the

4   provision of the Plan requiring that review of an adverse benefit determination "shall be conducted

5   by the Employee Benefits Committee (which is neither the individual who made the adverse benefit

6   determination that is the subject of appeal nor the subordinate of such individual)."  Id. at 35.

7   Relying on this provision, plaintiff argues that Connie Caperella, Pitney Bowes' Pension and Benefit

8   Plan Investments Director, should not have participated in the Employee Benefits Committee's

9   September 2004 decision to deny plaintiff's appeal because she executed the agreement to settle

10  plaintiff's pre-August 2002 benefit claims.  See Roboostoff Decl., Exh. 18 at 8.  However, the

11  adverse benefit determination that was at issue at the Committee's September 2004 meeting was the

12  employment department's November 2003 decision to discontinue plaintiff's disability benefits,

13  which was made by Barbara Bianco, a case manager for the Plan.  AR at 82.  As plaintiff does not

14  suggest that Caperella participated in making that decision, nothing in the Plan barred her from

15  sitting on the committee that entertained her administrative appeal.  Plaintiff's argument to the

16  contrary is without merit.  Thus, seeing that plaintiff has failed to identify any violations of plan

17  procedures that would warrant subjecting defendant's decision to discontinue her disability benefits

18  to de novo review, the court must reject plaintiff's attempt to overcome the plain meaning of the

19  Plan's discretionary language on that basis.

20  III.   Conflict of Interest

21        The last ground on which plaintiff seeks de novo review of the decision to terminate her

22  disability benefits is premised upon her assertion that defendant's decision was influenced by a

23  conflict of interest.  Under Ninth Circuit law, the fact that the plan administrator of an ERISA plan

24  has an economic incentive to deny an employee benefit claim will warrant applying de novo review

25  to an adverse benefit determination if the administrator's economic interest appears to have

26  influenced its decision.  Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1322-23 (9th Cir. 1995);

27  see also Nord v. Black & Decker Disability Plan, 356 F.3d 1008, 1010 (9th Cir.), cert. denied, __

28

9

1  U.S. __, 125 S. Ct. 62 (2004).  However, a plan participant seeking to prove the existence of such a

2  conflict must provide evidence "beyond the mere fact of apparent conflict, tending to show that the

3  fiduciary's self-interest caused a breach of the administrator's fiduciary obligations." Atwood, 45

4  F.3d at 1323.  Here, plaintiff has cited no evidence of a conflict of interest beyond the alleged

5  procedural violations that the court addressed in the preceding discussion.  Accordingly, for the

6  reasons stated above, the court is compelled to reject plaintiff's contention that the existence of such

7  a conflict warrants reviewing defendant's decision to terminate her disability benefits de novo.

8  IV.    Summary

9        In summary, the court holds that the Plan expressly grants defendant's Employee Benefits

10  Committee discretion to determine a plan participant's eligibility for long-term disability benefits.

11  The court also concludes that plaintiff has failed to identify any evidence in the record that would

12  establish a procedural violation or a conflict of interest of the type that would warrant applying de

13  novo review in the case at bar.  Accordingly, the court will review the decision to terminate

14  plaintiff's disability benefits for abuse of discretion.

15

16  CONCLUSION

17        For the reasons stated above, defendant's motion for partial summary judgment is

18  GRANTED.  Plaintiff's motion for partial summary judgment is DENIED.  The court will review

19  defendant's decision to deny plaintiff's claim for disability benefits under an abuse of discretion

20  standard.

21        IT IS SO ORDERED.

22

23  Dated: August 8, 2005

     MARILYN HALL PATEL
24   District Judge
     United States District Court
25   Northern District of California

26

27

28

10

**ENDNOTES**

1.  The court has noted defendant's objections to the admissibility of various exhibits that Roboostoff submitted as attachments to his declaration, including Exhibit 16.  However, the discussion that follows will make clear that the it is unnecessary to resolve these issues at the present time.  The court therefore denies defendant's evidentiary objections as moot.

2.  It should also be noted that one of the grounds that the Committee cited in denying plaintiff's appeal was the plan provision requiring that beneficiaries consent to examination by a consulting physician as a condition of receiving disability benefits.  Specifically, the Committee observed that plaintiff refused to permit Dr. Barry to conduct a second examination after she appealed the disability department's decision to terminate her benefits.  Given that this event occurred after that initial decision was made, <u>see</u> AR at 319, it is hardly surprising that the disability department did not consider it at that time.

UNITED STATES DISTRICT COURT
For the Northern District of California

11