1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6     CARA A. BURKE,

7                    Plaintiff,                    No. C 04-4483 MHP

               v.
8
      PITNEY BOWES, INC. LONG-TERM        **MEMORANDUM & ORDER**
9     DISABILITY PLAN,                    **Re: Cross-Motions for Summary**
                      Defendant.          **Judgment**
10    _____/

11          Plaintiff Cara A. Burke filed this action under the Employee Retirement Income Security Act

12    ("ERISA"), 29 U.S.C. section 1001 et seq., seeking review of the decision by defendant Pitney

13    Bowes, Inc. Long-Term Disability Plan (the "Plan") to terminate her disability benefits.  Now before

14    the court are the parties' cross-motions for summary judgment and defendant's objections to

15    evidence submitted by plaintiff.  Having considered the arguments presented and for the reasons

16    stated below, the court enters the following memorandum and order.

17

18    BACKGROUND

19          Prior to October 1998, plaintiff worked as a sales employee for Pitney Bowes Management

20    Services.  Def.'s Exh. A at 288 (hereinafter "AR").  As a Pitney Bowes employee, plaintiff qualified

21    for coverage under the provisions of the long-term disability benefit plan that defendant administers.

22    See generally id. at 1–60.  The Plan is subject to the requirements of the Employee Retirement

23    Income Security Act ("ERISA"), 29 U.S.C. section 1001 et seq.

24          On June 3, 1998 plaintiff was involved in a work-related automobile accident.  Id. at 79.  As

25    a result of her accident, plaintiff suffered back and neck injuries that caused her to miss

26    approximately five days of work.  Id  Approximately one month later, on July 7, 1998, plaintiff was

27    involved in another, non-work-related car accident.  Id.  This second accident aggravated her back

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1   and neck injuries, and she was subsequently diagnosed with multilevel lumbar degenerative disc

2   disease, spinal stenosis, and lumbar radidulopathy.  See id. at 79, 165.

3        On October 26, 1998 plaintiff went on disability leave.  Id. at 79, 236.  She has not returned

4   to work since that date.  See id.  Although she initially received workers' compensation benefits

5   during her absence from the workplace, plaintiff never applied for short-term disability benefits and

6   remained on leave after her workers' compensation payments ceased.  See id.

7        On June 8, 2001, plaintiff applied for long-term disability benefits.  See id.  Her application

8   was denied by the benefits department—the Plan's claims review fiduciary (the "Department")—on

9   the ground that her injuries were work-related and hence not covered by the disability insurance

10  policy that the Plan maintained.  Id. at 235.  Rather than appealing that determination to defendant's

11  Employee Benefits Committee (the "Committee"), as is required under the terms of the Plan,

12  plaintiff filed an action in this court on May 20, 2002, alleging violations of sections 104(b),

13  502(a)(1)(B), and 502(a)(3) of ERISA, 29 U.S.C. sections 1024(b), 1132(a)(1)(B), 1132(a)(3).  See

14  Roboostoff Dec., Exh. 16.  In September 2002, the parties entered into an agreement to settle

15  plaintiff's claims.  Id., Exh. 18.  Under the terms of the settlement agreement, plaintiff received

16  approximately $43,000 as compensation for allegedly past-due disability benefits and agreed to

17  release defendant from liability for all benefits claims arising before August 1, 2002.  Id. at 2–3.

18  After that date, the agreement provided that plaintiff could continue to receive benefits so long as

19  she continued to meet the Plan's definition of "Total Disability," a determination that was to be

20  "governed solely by the terms, process and procedures of the Plan and ERISA."  Id. at 2.

21       Under the terms of the Plan, a participant's ability to perform the "material duties" of his or

22  her own occupation initially guides the Total Disability determination.  Id. at 11.  However, after a

23  participant receives benefits for one year, eligibility for benefits turns on whether injury or illness

24  prevents a participant from being able "to engage in any gainful occupation or profession for which

25  he or she is, or could become, reasonably suited by education, experience, or training."  Id.

26  Plaintiff's initial twelve-month benefit period ended on August 1, 2003, thus triggering the

27  application of the "any gainful occupation" standard for establishing "Total Disability."  AR at 11.

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

In October 2003, defendant's Department conducted a review of plaintiff's continued benefits eligibility.  See id. at 83.  As part of that review, the Department considered the opinions of consulting physician Peter Griffin; plaintiff's treating physician, Ward Gypson; and the opinion of an outside medical consultant who was retained by the Plan, Richard Barry.  Id. at 82.  Relying primarily on the opinion of Dr. Barry,  the Department concluded that plaintiff no longer met the Plan's definition of "Total Disability."  Id.  Specifically, the Department cited Dr. Barry's finding that plaintiff's physical and neurological conditions were normal and his conclusion that her subjective symptoms were "unsupported by any objective physical or neurologic findings."  Id.  Accordingly, the Department concluded that plaintiff was able to return to "light duty work" and terminated her long-term disability benefits.  Id.

After being informed of that decision in a letter dated November 3, 2003, see id., plaintiff appealed the Department's determination to the Committee.  On September 27, 2004, the Committee met to review plaintiff's claim.  See id. at 65.  In addition to considering the evidence that was presented to the Department, the Committee reviewed the result of a functional capacity evaluation that plaintiff underwent on June 28, 2004, an August 24, 2004 letter from Dr. Barry, and updated medical evidence that plaintiff had submitted.  Id. at 67.  Upon completion of its review, the Committee affirmed the Department's determination that plaintiff was not totally disabled within the meaning of the Plan.  Id. at 63.  In addition, the Committee identified a number of other grounds for denying plaintiff's claim for benefits, including her refusal to submit to an additional evaluation by Dr. Barry, as is required under the terms of the Plan, and evidence that at least eighty percent of her current condition was attributable to a work-related accident.  Id. at 63–64.

Plaintiff filed this action after she was notified of the Committee's decision in a letter dated October 12, 2004.  Id. at 61–64.  In her complaint, plaintiff asserts that defendant's decision to discontinue her disability benefits violated ERISA and she asserts claims pursuant to 28 U.S.C. section 2201 and 29 U.S.C. sections 1132(a)(1)(B) and 1132(a)(3) for recovery of past-due benefits and declaratory relief.   On August 8, 2005, this court ruled that it would review defendant's

3

1  decision to deny plaintiff's claim for disability benefits under an abuse of discretion standard.  Now

2  before the court are the parties' cross-motions for summary judgment.

3

4  LEGAL STANDARD

5  I.    Summary Judgment

6         Summary judgment is proper when the pleadings, discovery, and affidavits show that there is

7  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

8  matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

9  proceedings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material

10  fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

11  nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying

12  those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

13  issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the

14  opposing party will have the burden of proof at trial, the moving party need only point out "that

15  there is an absence of evidence to support the nonmoving party's case."  Id.

16         Once the moving party meets its initial burden, the nonmoving party must go beyond the

17  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

18  genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

19  party's allegations.  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th

20  Cir. 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and

21  inferences drawn from the facts must be viewed in the light most favorable to the party opposing the

22  motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

23

24  II.    Judicial Review of Benefits Determinations Under ERISA

25         Under the abuse of discretion standard, the court's review is limited to the administrative

26  record, and the decision of an administrator will not be disturbed unless the court determines that the

27  decision was arbitrary or capricious.  McKenzie v. General Tel. Co. of Cal., 41 F.3d 1310, 1316 (9th

28

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Cir. 1994), cert. denied, 514 U.S. 1066 (1995); Clark v. Washington Teamsters Welfare Trust, 8

2   F.3d 1429, 1431 (9th Cir. 1993).  "The touchstone of 'arbitrary and capricious' conduct is

3   unreasonableness." Clark, 8 F.3d at 1432.  ERISA plan administrators abuse their discretion if they

4   render decisions without any explanation, construe provisions of the plan in a way that conflicts with

5   the plain language of the plan, or rely on clearly erroneous findings of fact in making benefit

6   determinations.  Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1472–73 (9th Cir. 1993).

7

8   DISCUSSION

9        The question presented in the parties' cross-motions for summary judgment is whether the

10  Committee's determination that plaintiff did not meet the "Total Disability" standard constitutes an

11  abuse of discretion.  Defendant asserts that even if the Committee decision is deemed an abuse of

12  discretion, plaintiff violated a number of procedural requirements which independently justify

13  termination of benefits under the terms of the Plan.  Also before this court are defendant's objections

14  to the evidence presented by plaintiff in support of this motion.

15

16       I.    Objections to Evidence

17       Defendant objects to evidence cited by plaintiff in support of her motion for summary

18  judgment,[1] arguing that these additional documents are not a part of the administrative record and

19  therefore should not be considered by this court in its review.   Plaintiff, in response, insists that the

20  documents in question are in fact a part of the administrative record.  Alternatively, plaintiff asserts

21  that under ERISA's "full and fair review" standard the documents should have been considered by

22  the Committee.  The documents at issue are a letter and a number of  medical reports from

23  1998–1999 (namely exhibits A–D attached to the declaration of Constantin Roboostooff).   Plaintiff

24  contends that these documents are a part of the administrative record because they were considered

25  during the 2001 claim before the Department.  However, defendants argue that the Department's

26  2001 claim denial, which resulted in the 2002 settlement agreement, was a separate claim

27  determination and that the disputed documents were not generated in support of the current 2003

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    claim denial or during the course of plaintiff's appeal of that Department decision to the Committee.

2        Notwithstanding plaintiff's assertions to the contrary, the court finds that the evidence

3    presented by plaintiff in the Roboostoff declaration is not a part of the administrative record, and

4    thus the court may not consider it.  Ninth Circuit precedent has clearly established that under an

5    abuse of discretion standard, a district court's review of an agency's determination is limited to the

6    administrative record.  McKenzie, 41 F.3d at 1316 (holding that the district court erred in relying on

7    vocational evidence to grant summary judgment for plan administrators as this evidence was never

8    presented to the plan administrators for a determination of claimant's eligibility for benefits under

9    the "any occupation" standard).   This circuit has stated that "the administrative record consists of

10   those materials in the agency record *at the time the [agency] decision was made*." Haynes v. United

11   States, 891 F.2d 235, 238 (9th Cir.1989) (emphasis in original.); see also Thompson v. U.S. Dept. of

12   Labor, 885 F.2d 551, 555 (9th Cir. 1989) (finding that "the 'whole' administrative record, therefore,

13   consists of all documents and materials directly or indirectly considered by agency decision-makers

14   and includes evidence contrary to the agency's position."); Animal Defense Council v. Hodel, 840

15   F.2d 1432, 1436 (9th Cir. 1988), amended by, 867 F.2d 1244 (1989).  A district court may look at

16   evidence outside of the administrative record for "background information" or to determine if all

17   relevant evidence was considered.  Thompson, 885 F.2d at 555.   However, it may not look at new

18   evidence and on that basis find that an agency determination was unreasonable—since that evidence

19   was not before the decision-maker at the time of the decision.  See Taft, 9 F.3d 1469 at 172.

20       There is no evidence in the record that the documents at issue were before the Committee at

21   the time of its decision.  The September 27, 2004 minutes of the Committee provides a detailed list

22   of all documents that were before the Committee is provided, including additional documents

23   submitted by plaintiff which were not before the Department at the time of its initial denial of her

24   claim in 2003.[2]  See AR at 66–67.  None of the documents at issue are included in this list.  Plaintiff

25   was given, and indeed exercised, the opportunity to supplement the documents that were before the

26   Department in 2003, but she declined to include the disputed documents.  To read the

27   "administrative record" in this recent determination to include the documents used in the separate

28

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1  claim denial process in 2001 would result in the anomalous result noted by the Taft court where "an

2  administrator [is found to have] abused its discretion by failing to consider evidence not before it."

3  Taft 9 F.3d 1469 at 172.  The documents were not before the Committee and thus they are not a part

4  of the administrative record.

5      Nonetheless, in reliance on 29 C.F.R. section 256.503 of ERISA's implementing regulations,

6  plaintiff argues that these documents should have been reviewed by the Committee.  Pursuant to this

7  sub-section, in order to conduct a "full and fair review," the reviewing body must "take[] into

8  account *all* comments, documents, records, and other information submitted by the claimant relating

9  to the claim, *without regard to whether such information was submitted or considered in the initial*

10 *benefit determination.*"[3]  29 C.F.R. § 2560.503-1(h)(iv) (emphasis added).   However, in asserting

11 the applicability of this subsection, plaintiff conflates the two separate benefit determinations.

12 Under section 2560.503-1, the initial decision made by a claims department is entitled to a full and

13 fair review by the committee or reviewing body which makes the final claim determination.  As

14 previously noted, plaintiff never submitted the documents at issue to the Department as part of the

15 "initial benefit determination" for her current claim, but rather submitted the documents as a part of

16 her 2001 claim.  Under these implementing regulations, the reviewing body is not the court but the

17 Committee that conducts a review of the initial agency determination.  In the present action, the

18 "initial benefit determination" is the 2003 and not the prior 2001 Department decision.

19 Consequently, plaintiff's reliance on section 2560.503-1 to invalidate the agency's determination is

20 unavailing.

21     Accordingly, the court sustains defendant's objections and limits its review of this case to the

22 information available in the administrative record.

23

24     II    Reasonable Basis for Committee's Decision

25     For the Committee to find that a participant is *not* "Totally Disabled" under the Plan, and

26 therefore ineligible for long term disability benefits, the Committee must make essentially two

27 determinations: (1) that the plan participant's disability does not preclude him/her from performing

28

7

another occupation and (2) that any earnings that the plan participant would receive at such other occupation would amount to sixty percent of her pre-disability salary.[4]  In other words, if the Committee determines that a plan participant cannot obtain some form of work where she would earn at least sixty percent of her pre-disability income, then she is "Totally Disabled" within the meaning of the Plan.  Plaintiff contends that both these decisions by the Committee were clearly erroneous because: (1) it relied solely on the independent medical evaluation conducted by Dr. Richard Barry in determining whether she could work and (2) it did not provide evidence to support its conclusion that she is capable of earning at least sixty percent of her pre-disability earnings.

A.    Reliance on Dr. Barry's Evaluation

As a preliminary matter, plaintiff's attempt to change the standard of review that is used to evaluate the Committee's decision, elevating it from one of reasonableness to one of "substantial evidence," is unsupported by the applicable law.  Essentially, plaintiff argues that the medical evidence in the administrative record, specifically reports from her treating physician Dr. Ward Gypson, supports a finding that she is unemployable and meets the Plan's definition of Total Disability.  For the Committee to not have credited this evidence, plaintiff contends, renders its decision arbitrary and capricious.  Although not specifically stated, it appears that this is an attempt by plaintiff to apply the "treating physician rule" to the case at hand.  Under this treating physician rule the administrator's decision must be based upon "substantial evidence in the record" if the administrator chooses to reject the opinions of the treating physician.  See Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d 1130, 1143 (9th Cir. 2001), vacated by, 539 U.S. 901 (2003).  However, the United States Supreme Court, in Black and Decker Disability Plan v. Nord, specifically held that no special weight, such as a substantial evidence standard, should be accorded to the opinions of a claimant's physician, "nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  538 U.S. 822, 833–34 (2003).  As this court has already determined, reasonableness and not "substantial evidence" is the appropriate test in evaluating the Committee's decision.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    In addition, plaintiff contends that the Committee's reliance on Dr. Barry's independent

2    medical evaluation as the primary reason to deny benefits is an abuse of discretion given the weight

3    of medical evidence in the record supporting her claim of Total Disability.  However, the Ninth

4    Circuit recently stated that "[a]n ERISA administrator's exercise of its discretion to adjudicate

5    claims is not a mere exercise in expert poll-taking." Boyd v. Bert Bell/Pete Rozelle NFL Players

6    Ret. Plan, 410 F.3d 1173, 1179 (9th Cir. 2005).  The court in Boyd held that "a mere tally of experts

7    is insufficient to demonstrate that an ERISA fiduciary has abused its discretion, for even a single

8    persuasive medical opinion may constitute substantial evidence upon which a plan administrator

9    may rely in adjudicating a claim." Id.  In the ERISA context, "even decisions directly contrary to

10   evidence in the record do not necessarily amount to an abuse of discretion." Taft, 9 F.3d at 1473.

11   Plaintiff cannot argue that the Committee abused its discretion simply because there are more

12   experts in support of plaintiff's claim.   The Committee is not required to view all evidence equally

13   but has the discretion to determine what weight to ascribe to the opinions or evaluations presented,

14   so long as its decision is reasonable.

15        In another argument directed at the fact that the Committee relied on Dr. Barry's opinion,

16   plaintiff again misconstrues the requirement for a "full and fair review"—but this time with respect

17   to 29 U.S.C. sections 1133(1) and (2).  Plaintiff asserts that an "arbitrary" failure to credit evidence

18   presented by a claimant is a violation of section 1131(2)'s "full and fair review" requirement.

19   However, a failure to arbitrarily credit information speaks to whether the ultimate decision was

20   reasonable.  The full and fair review requirement places limitations on the review process, not he

21   substantive merits of the reviews outcome.  As previously discussed, under ERISA's implementing

22   regulations, all that a full and fair review demands is that all relevant  information be considered by

23   the body reviewing the initial benefit determination.  See 29 C.F.R. §§ 2560.503-1(h) and (m)(8);[5]

24   see also note 2, supra.

25        In the present case, the minutes from the Committee meeting specifically list, among others,

26   the evaluations from Doctors Zwerin, Griffin, Ward Gypson as well as the functional evaluation

27   performed by Lok Chan, a Work Capacity Specialist, at the request of Dr. Zwerin.   Furthermore, the

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   denial letter itself references not only Dr. Barry's evaluation, but also those of Dr. Ward Gypson and

2   Dr. Marvin Zwerin.  AR at 63.   Indeed, the Committee specifically stated that it "thoroughly

3   analyzed and discussed the documents relating to [plaintiff's] case and deliberated on all of the

4   relevant issues posed by these facts and circumstances."  AR at 63.   Given the court's deferential

5   stance towards the Committee's decision, "where an ERISA administrator states that it considered

6   the record 'as a whole,' we must assume that it did so, in the absence of clear and convincing

7   evidence to the contrary."  Abatie v. Alta Health & Life Ins. Co., 421 F.3d 1053, 1063 (9th Cir.

8   2005).  No such evidence was presented in this case—presumably because plaintiff does not actually

9   dispute that defendant considered all the evidence before it, but rather asserts that the Committee

10  relied exclusively on Dr. Barry's determination and arbitrarily failed to rely upon the evidence

11  presented by her treating physician.  Although the Committee may have relied on Dr. Barry's report,

12  it is clear that the Committee considered all of the evidence before finding that Dr. Barry's

13  evaluation was more credible.  Id.  Plaintiff has not demonstrated that the Committee failed to

14  provide a full and fair review of the initial claim denial decision.

15

16              B.      Reasonableness of the "Total Incapacity" Determination

17          Having determined that reliance on a single independent medical evaluation does not per se

18  constitute an abuse of discretion, the court must now determine whether the record, as presented to

19  the Committee, provides a reasonable basis for the Committee to conclude that plaintiff's disability

20  does not preclude her from obtaining alternate employment.  The Committee had conflicting reports

21  from multiple doctors regarding plaintiff's condition.  Dr. Barry's independent medical evaluation

22  clearly stated that plaintiff "has an objectively normal physical and neurological examination" and

23  that "she demonstrates a very high level of self-perceived impairment."  AR at 104.  Consequently,

24  Dr. Barry found that plaintiff could return to light work "with no lifting, pushing or pulling over 30

25  pounds, and no repeated bending."[6]  Id.  Dr. Gypson found that plaintiff could perform activities of

26  daily living with certain restrictions—for example the inability to walk or sit for more than fifteen

27  minutes at a time and the inability to lift more than fifteen pounds.  Id. at 85.  Dr. Zwerin, however,

28

after a functional capacity evaluation performed by Lok Chan, concluded that plaintiff is incapable

of returning to the workforce.  In the face of these conflicting medical evaluations, the Committee

based its decision  primarily on Dr. Barry's evaluation, finding that

> Dr. Barry's IME (reporting no objective neurological findings to support your complaints and reporting a high level of self-perceived impairment) to be more credible than Dr. Zwerin's opinion.  The members were moved by the fact that your physician, Dr. Gypson, reported that you could perform activities of daily living with some limitations.

AR at 63.  It is clear that the Committee's decision has a reasonable factual basis in the record as it

is based upon Dr. Barry's evaluation as well as in part that of plaintiff's own treating physician, Dr.

Gypson.  Further, the court notes that Dr. Zwerin's conclusion was very general and did not provide

specific reasons for his determination.  Although reasonable people may disagree as to whether

plaintiff is able to work, it is for precisely that reason that this court cannot characterize the

Committee's decision as arbitrary or capricious.  See, e.g. Taft, 9 F.3d at 1473.

Plaintiff nonetheless questions the integrity of Dr. Barry's evaluation.  Plaintiff argues that

Dr. Barry only saw plaintiff on one occasion and did not have plaintiff's radiological and magnetic

resonance imaging studies when he made his evaluation.  Although, if true, these deficiencies may

present some potential weaknesses in Dr. Barry's evaluation, they do not support a finding that it

was arbitrary and capricious for the Committee to rely upon the evaluation.  In Taft, the court held

that it could not determine that apparently flawed doctor's reports were "so clearly erroneous that

[defendant] abused its discretion by relying on them." Id.  This was despite the fact that the doctor's

report "did not have sufficient information on which to base a firm conclusion" that plaintiff was

totally disabled, and despite the fact that the doctor thought he was examining the plaintiff for a

workers' compensation claim "for an unrelated neck injury" as opposed to an ERISA claim.  See id.

at 1471.  Similarly, it is not for this court to say that the reliance by the Committee on the allegedly

incomplete evaluation of Dr. Barry constitutes an abuse of discretion.

Thus, given the highly deferential standard of review in this case, the court finds that the

Committee's decision that plaintiff was not "totally incapacitated" and could enter the workforce has

a reasonable factual basis and was within its discretionary authority.

1

C.    Evidence Regarding Plaintiff's Earning Potential

2      Plaintiff also contends that the Committee's decision is unreasonable because the Committee

3 did not provide evidence to support its conclusion that plaintiff was capable of earning at least sixty

4 percent of her pre-disability earnings.  The Committee determined that plaintiff "would be capable

5 of earning at least $30,326.40 per year (60% of her pre-disability earnings) in a sedentary, light-duty

6 job given [plaintiff's] education (college degree in Political Science) and work experience."  AR at

7 63.   Defendant makes two arguments in response.  First, defendant contends that it is the plaintiff's

8 burden to prove eligibility for benefits since section 5.4(a) of the Plan states that "the Employee may

9 be required to submit conclusive medical evidence of the continuance of his or her Total Disability."

10 Id. at 18.  Therefore, defendant argues, it is not the Committee's responsibility to present evidence

11 regarding plaintiff's post-disability earning potential.  Second, defendant asserts that pursuant to the

12 Ninth Circuit's holding in McKenzie, a plan fiduciary is not required to conduct a vocational

13 assessment in determining the ability of a plan participant to engage in "any [type of] occupation."

14 McKenzie, 41 F.3d at 1317.

15      The court finds that although the record supports the Committee's finding that plaintiff can

16 enter the workforce, the Committee's determination with respect to the level of earnings that

17 plaintiff would be able to procure is an abuse of discretion as it appears to be based on mere

18 conjecture rather than on a reasonable fact-finding process.  The McKenzie court rejected the

19 position taken by some courts that under the "any occupation" standard vocational evidence should

20 *always* be considered.  Instead, the court adopted the standard that "vocational evidence is

21 unnecessary where the evidence in the administrative record supports the conclusion that the

22 claimant does not have an impairment which would prevent him from performing *some identifiable*

23 *job.*" McKenzie, 41 F.3d at 1317 (emphasis added).  Thus, the court found that, complementary to

24 the case-by-case approach adopted by the Fifth and District of Columbia Circuits, the plan

25 administrator is not required "in *every case* where the 'any occupation' standard is applicable to

26 collect vocational evidence." Id.; see also Duhon v. Texaco, Inc., 15 F.3d 1302, 1309 (5th Cir.

27 1994); Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1455 (D.C. Cir. 1992).  McKenzie is not as

28

UNITED STATES DISTRICT COURT
For the Northern District of California

12

expansive as defendant would have the court read it but rather it stands for the proposition that a plan fiduciary, interpreting an "any occupation" standard, does not *per se* abuse its discretion when it declines to obtain vocational evidence.[7]

In the case at hand, unlike in <u>McKenzie</u>, the fiduciary's decision is not simply a determination that plaintiff is able to perform "some identifiable job" or to obtain "any occupation," but is also a determination that this job will generate at least sixty percent of plaintiff's pre-disability earnings. The Committee decision notes that plaintiff has a college degree and extensive work experience, however the Committee does not list any reasonable evidence upon which it relies in concluding that the plaintiff could earn an annual income of $30,326.40. In this situation, although the medical evidence supports a finding that plaintiff is employable, it does not support a determination which purports to quantify any potential earnings by plaintiff. Thus, either vocational evidence, presented by "someone knowledgeable about the physical demands and requirements of occupations for which a claimant might be qualified" or other reliable evidence should have been used by the plan administrator in reaching its decision. <u>See</u> <u>McKenzie</u> (quoting <u>Jenkinson v. Chevron Corp.</u>, 634 F. Supp. 375, 379 (N.D. Cal. 1986))

Additionally, defendant's contention that it is not required to base its determination on vocational evidence because it is plaintiff's burden to establish eligibility for benefits is not supported by applicable law or the Plan's terms. Although the Plan requires plaintiff to submit supporting medical documentation for her disability claim and then to supplement that information periodically, defendant points to no provision in the Plan which states that plaintiff has the additional burden to produce evidence supporting a potential vocational assessment.[8] Plaintiff has already met her burden of production in submitting *medical* evidence of her continuing disability, and defendant has cited no authority to support its novel argument that it is plaintiff's burden to also submit *vocational* evidence to aid the Committee in its decision-making process.

Furthermore, in making this argument, defendant is attempting to assume the benefits while disavowing the requirements of an abuse of discretion standard. Here, the Committee retains discretionary authority to construe all the terms of the Plan, including how to define whether a plan

13

UNITED STATES DISTRICT COURT
For the Northern District of California

participant meets the "Total Disability" eligibility standard.  See AR at 26.  This discretion is

precisely why the Committee's determination is subject to an abuse of discretion standard.  Under an

abuse of discretion standard of review, courts have held that in making a claim determination

involving an "any occupation" standard, a vocational assessment may be required in some situations.

See, e.g. McKenzie, 41 F.3d at 1316 (finding the inverse—that evidence from a vocational expert is

not always a requirement).  After having obtained a deferential standard of review, defendant cannot

now argue that that it is not subject to the requirement of a vocational assessment when it is deemed

necessary or that it is not required to base its decision on other probative evidence in order to ensure

that the exercise of its discretion is not arbitrary and capricious.  The decision must be supported by

some evidence.

Consequently, the court finds that, without any evidentiary basis, the Committee's

determination that plaintiff was able to engage in any occupation that would generate at least sixty

percent of her pre-disability earnings is arbitrary and capricious.

II.     Violation of Plan Terms

Notwithstanding the Committee's abuse of its discretion with respect to its "Total Disability"

determination, there still remains an independent basis for the denial of plaintiff's benefit claim.

Defendant contends that plaintiff violated various terms of the Plan involving attendance of a

medical examination, submission deadlines and benefit exclusions which, by themselves, warrant

denial of benefits.  As the plaintiff's refusal to attend a scheduled medical exam is dispositive, the

court need not reach the separate procedural violations alleged by defendant.

Defendant contends that plaintiff violated section 5.7(d) of the Plan when she refused to

attend a medical examination in August of 2004.  Plaintiff had attended an initial medical exam

before the Department made its 2003 claim determination.  According to the Committee, following

the Department's 2003 claim denial and while plaintiff's appeal to the Committee was pending, a

second medical examination was considered necessary to evaluate additional medical information

submitted by plaintiff in support of her claim.[9]  Pursuant to section 5.7(d) benefits may be

discontinued or suspended if a participant "refuses to attend an independent medical examination which is scheduled within a reasonable distance from the Participant's primary residence or for which the Company has made reasonable arrangements for the Participant to attend."  AR at 20. Without citing to any Plan term provisions that support her interpretation, plaintiff asserts that this provision is inapplicable because her benefits had already been "suspended or discontinued" based on the initial medical examination that was submitted to the Department.  In essence, plaintiff argues that since the Department had already suspended her benefits,  the Committee could not in effect discontinue benefits that had already been suspended.  Further, plaintiff asserts that the Committee may not rely on a new reason to deny her benefits claim.  In other words, under plaintiff's interpretation, the Committee is limited to the bases upon which the Department denied her claim.

However, the court finds that the Committee's construal of section 5.7(d) to suspend plaintiff's benefits is a reasonable exercise of the Committee's discretion and this court will not disturb it.  The Committee has been given interpretive authority and the "reasonable exercise of [its] discretion cannot be second-guessed by a court."  Clark, 8 F.3d at 1432.  As previously discussed, there are two levels of administrative review of a participant's eligibility for benefits, and to read section 5.7(d) as only being applicable to the initial level is not supported by the Plan terms.  The Committee, rather than the Department, is the entity charged with interpreting the Plan and is responsible for making a final administrative decision.  See note 3, supra.

Further, the Ninth Circuit has recently held that "[t]here is no rule that an ERISA administrator, after failing to raise a denial reason in the initial benefit determination, is estopped from invoking that reason upon appeal."  Abatie, 421 F.3d 1053 at 1061.  Indeed, this court addressed this very issue in its prior order finding that an abuse of discretion was appropriate.  The court noted that "plaintiff has not cited any provision of the Plan that would prohibit the Committee from considering issues that were not raised by the Department."  Memorandum & Order, No. C 04-04483 MHP, slip op. at 8 (N.D. Cal. Aug. 8, 2005).  Defendant's interpretation of section 5.7(d) to enable the Committee to suspend plaintiff's benefits is reasonable and accords with the terms of the Plan.

15

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  As a result, the fact that plaintiff refused to attend her August 2004 scheduled examination

2  provides an independent and reasonable basis for the denial of plaintiff's benefits claim.

3

4       IV.    <u>Plaintiff's Second Prayer For Relief</u>

5       Given the foregoing, the court finds that plaintiff's second claim for declaratory relief under

6  section 502(a)(3) is similarly unavailing.

7       In addition, the Supreme Court has held that relief under this catch-all provision of the ERISA

8  act is inappropriate where adequate relief is available elsewhere in the statute. <u>See</u> <u>Varity v. Howe</u>,

9  516 U.S. 489, 512 & 515 (1996) (finding that the structure of the statute's subsections "suggests that

10  these "catchall" provisions [sections 502(a)(3) and 502(a)(5)] act as a safety net, offering appropriate

11  equitable relief for injuries caused by violations that section 502 does not elsewhere adequately

12  remedy"); <u>see also</u> <u>Bowles v. Reade</u>, 198 F.3d 752, 759–60 (9th Cir. 1999) (holding that plaintiff

13  could not bring a claim under section 502(a)(3) as section 502(a)(2) provided an adequate remedy);

14  <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474–75 (9th Cir.1997) (finding that a beach of fiduciary

15  duty claim was inappropriate because a breach of contract remedy under section 502(a)(1) was

16  adequate).

17       In the present action, plaintiff seeks declaratory relief that she has a "right to receive [past and

18  future] long-term disability benefits under the Plan." Complaint at 6. Contrary to plaintiff's

19  assertions, this is a claim for damages styled as a claim for an equitable remedy. The damages claim

20  is adequately addressed by the narrower section 502(a)(1)((B) which states in relevant part that a plan

21  participant may bring an action "to recover benefits due him under the terms of his plan, to enforce

22  his rights under the terms of the plan, or to clarify his rights to future benefits . . ." 29 U.S.C. §

23  1132(a)(1)(B). Consequently, this second prayer for relief is dismissed as a matter of law.

24

25

26

27

28

16

V.   Summary

Having considered each of the parties' arguments, the court (1) sustains defendants' objections to the evidence contained in Roboostoff declaration; (2) holds that the Committee's findings that plaintiff was not totally incapacitated and could enter the workforce was not an abuse of discretion; and (3) holds that the Committee's finding with respect to plaintiff's ability to earn at least sixty percent of her pre-disability income is unreasonable.

Ordinarily this would form the basis for a remand to the Committee on this limited issue. However, since the court holds that the Committee's construal of section 5.7(d) does not conflict with the plain meaning of the Plan terms and is not unreasonable in its interpretation, this provides an independent basis for denial sufficient to sustain the Committee's denial of the claim.  The court further dismisses plaintiff's second prayer for relief in its entirety as duplicative.

Under an abuse of discretion standard, the Committee's denial of plaintiff's claim for long-term disability benefits was reasonable and must thus be accorded due deference.  Thus, because there is no material dispute of fact with respect to these conclusions, the court grants defendants' motion for summary judgment.

CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: January 3, 2006

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

17

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1

**ENDNOTES**

2

1.  Defendant's motion is mistakenly titled:  "Defendant's Objections to Evidence Submitted by

3

Plaintiff in Support of Her Motion to *Determine the Proper Standard of Review*." (Emphasis added).

4

2.  It is important to note that the decision on review before this court is the October 12, 2004

5

decision made by the Committee on appeal, not the initial November 3, 2003 decision.  Plaintiff

argues separately that the November 3, 2003 Department decision was decided incorrectly.

6

However, it is the Committee that takes final administrative action with respect to plaintiff's

disability benefits.  AR at 64.  Section 7.6 of the Plan states that the Committee is the "Plan

7

Administrator" and according to section 7.4, its determinations will be "final, conclusive and

binding."  AR at 26, 27.  Therefore, it is the Committee's decision that is reviewed by this court.

8

See Abatie v. Alta Health & Life Insurance Co., 421 F.3d 1053, 1062 (9th Cir. 2005) (court

9

reviewed final determination despite inconsistencies in the reasoning from the initial claim review).

10

3.  Section 2560.503-1(h) states in relevant part:

11

Appeal of adverse benefit determinations.

(1) In general. Every employee benefit plan shall establish and maintain a procedure by

12

which *a claimant shall have a reasonable opportunity to appeal an adverse benefit*

*determination to an appropriate named fiduciary of the plan, and under which there will be*

13

*a full and fair review of the claim and the adverse benefit determination.*

(2) Full and fair review. Except as provided in paragraphs (h)(3) and (h)(4) of this section,

14

the claims procedures of a plan will not be deemed to provide a claimant with a reasonable

15

opportunity for a *full and fair review* of a claim and adverse benefit determination unless the

claims procedures. . .

16

(iv) Provide for a *review that takes into account all comments, documents, records, and other*

17

*information submitted by the claimant relating to the claim, without regard to whether such*

*information was submitted or considered in the initial benefit determination.*

18

29 C.F.R. § 2560.503-1(h) (emphasis added).

19

4.  Section 2.33 of the Plan defines "Total Disability" as the inability of the Participant

20

(i) to perform the material duties of his or her own occupation for a maximum period of

twelve (12) months after the Qualifying Period, and (ii) that thereafter the Participant is

21

unable, because of injury or illness, to engage in *any gainful occupation* or profession for

which he is, or could become, reasonable suited by education, experience, or training;

22

*provided*, however, that the amount of earnings that the Participant would receive from

engaging in such occupation or profession would be *less than sixty percent* of the

23

Participant's annual or annualized earnings immediately prior to the event giving rise to the

Total Disability.

24

AR at 11(emphasis added).

25

26

5.  29 C.F.R. section 2560.503-1(m)(8) defines relevant information as documents or information

that was relied upon, submitted, considered, or generated in the course of making the benefit

27

determination.  Other relevant documents include those relating to the administrative processes of

28

18

1
2

the plan as well as policy or guidance statements with respect to plan interpretation. See generally 29 C.F.R. § 2560.503-1(m)(8)(i)–(iv).

3
4
5

6. Plaintiff argues that this conclusion contradicts the definition of "light work" described in the United States Department of Labor's Dictionary of Occupational Titles. AR at 296. The light work definition, however, requires exerting twenty pounds of force occasionally, ten pounds of force frequently, or a negligible amount of force constantly. Id. Dr. Barry's recommendation falls squarely within this definition.

6
7
8
9

7. In McKenzie, the court found that a fifty-two year old man with a bachelor's degree and a master's degree was clearly employable because he was highly educated. Thus, the court held the plan administrator "did not abuse its discretion or act arbitrarily and capriciously when it concluded that claimant's disability did not prevent him from pursuing any occupation." McKenzie, 41 F.3d at 1318.

10
11
12
13
14

8. The Plan states in relevant part:

> An Employee must support his or her initial claim for benefits by submitting, in a form and manner determined by the Disability Department, written proof substantiating the occurrence, character and extent of the disability before the expiration of the one-year period commencing on the date of Total Disability. Thereafter, as requested by the Disability Department from time to time, *the Employee may be required to submit conclusive medical evidence of the continuance of his or her Total Disability.*

AR at 18 (emphasis added).

15
16
17
18

9. The Committee noted that the request for an additional medical examination was "reasonable given the new medical reports and FCE [functional capacity evaluation] submitted by Ms. Burke in support of her appeal, the dated nature of the prior IME [medical evaluation], and the fact that the Disability Department had arranged transportation for Ms. Burke to and from the IME, which was a reasonable distance from Ms. Burke's home." AR at 68.

19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

19